933 A.2d 967 (2007)
396 N.J. Super. 309
MERCER MUTUAL INSURANCE COMPANY, Plaintiff
v.
Joseph N. PROUDMAN, Sr., The Estate of Marie E. Proudman, Korman Residential Properties, Inc. t/a Korman Suites, Hartford Insurance Company as Subrogee of Korman Suites, Sergeant David Harkins, Detective John Stollsteimer, Patrolman John Andriscola, Patrolman Troy Kenuk, Peter Lamarra, Allstate Insurance Company as Subrogee of Peter Lamarra, Laura Tresca, Jan Olen, Defendants, and
Dolores Graziano and Albert Graziano, her husband, Defendants/Third-Party Plaintiffs-Appellants
v.
R.J. Reynolds Tobacco Company, Third-Party Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued October 1, 2007.
Decided October 22, 2007.
*968 Gary D. Ginsberg, Mount Laurel, argued the cause for appellants (Ginsberg & O'Connor, attorneys; Mr. Ginsberg, on the brief).
Anne M. Patterson, Morristown, argued the cause for respondent (Riker, Danzig, Scherer, Hyland & Perretti, attorneys; Ms. Patterson, of counsel; Maha M. Kabbash, on the brief).
Before Judges LINTNER, SABATINO and ALVAREZ.
The opinion of the court was delivered by
LINTNER, P.J.A.D.
This appeal involves the application of the absolute defense under N.J.S.A. 2A:58C-3a(2) of the New Jersey Products Liability Act (Products Liability Act), N.J.S.A. 2A:58C-1 to -11, precluding suits for defective design where the harm is "caused by an unsafe aspect of the product that is an inherent characteristic of the product and . . . would be recognized by the ordinary person who uses or consumes the product."
On March 19, 2004, seventy-nine-year-old Marie Proudman left a Viceroy cigarette burning on a chair in her apartment in Gloucester Township, causing a fire that destroyed the residence. Dolores Graziano, Proudman's daughter, was in the apartment at the time of the fire. Proudman's liability carrier, Mercer Mutual Insurance Company (Mercer Mutual), filed an interpleader action naming various potential claimants, including Dolores and her husband, Albert, seeking to pay the full limits of its policy ($100,000) into court.
In February 2006, Dolores and Albert filed, with leave of court, a third-party complaint against R.J. Reynolds Tobacco Company, seeking damages for personal injuries allegedly sustained by Dolores as a result of the fire. In October 2006, Mercer Mutual settled its interpleader action, leaving only the Grazianos' (plaintiffs) third-party complaint against R.J. Reynolds Tobacco Company (defendant).[1]
On May 12, 2006, defendant moved to dismiss the third-party complaint for failure to state a claim upon which relief can be granted. R. 4:6-2(e). Following oral argument on the motion, the judge dismissed plaintiffs' third-party complaint. Plaintiffs appeal and we now affirm substantially for the reasons set forth by the motion judge.
In their complaint, plaintiffs alleged that the Viceroy cigarette, manufactured by defendant, was defective and a cause of the fire because it "was not a self-extinguishing cigarette known as a `Fire Safe' cigarette . . . currently sold and distributed in New York and California." Their complaint asserted that defendant was liable under the Products Liability Act. Dismissing the suit, the motion judge found that plaintiffs failed to assert a cause of action because the inherent danger of the product, i.e., "the capacity . . . to ignite a fire [and] . . . burn . . . cannot be completely eliminated."
To understand plaintiffs' assertion, we first address, conceptually, self-extinguishing cigarettes and recent applicable legislation. On May 4, 2007, recognizing, in part, that "[c]igarettes are the leading cause of fire deaths" and injuries and "[c]igarette-caused fires result in billions *969 of dollars of property losses" and "unnecessarily jeopardize firefighters," N.J.S.A. 54:40A-55, our Legislature passed The Reduced Cigarette Ignition Propensity and Firefighter Protection Act (Reduced Cigarette Ignition Act), N.J.S.A. 54:40A-54 to -66, effective June 1, 2008. N.J.S.A. 54:40A-55j declares that "[i]t is . . . fitting and proper for this State to adopt the cigarette fire safety standard that is in effect in New York State to reduce the likelihood that cigarettes will cause fires and result in deaths, injuries and property damage."
Subject to certain enumerated fines and penalties, all cigarettes sold in this State are to be certified as meeting certain test criteria as set forth in the "Standard Test Method for Measuring the Ignition Strength of Cigarettes" in accordance with the American Society of Testing and Materials. N.J.S.A. 54:40A-57a(1). That standard requires in part that "[n]o more than 25 percent of the cigarettes tested in a test trial . . . shall exhibit full length burns." N.J.S.A. 54:40A-57a(3).
The Products Liability Act (PLA) codified the case law, leaving "intact" the three theories, specifically defective manufacture, defective design, and defective warnings, by which a manufacturer or seller may be held strictly liable for harm caused by a product. Roberts v. Rich Foods, Inc., 139 N.J. 365, 375, 654 A.2d 1365 (1995). However, in so doing, the PLA provided, under Section 3a(2), an affirmative defense not previously recognized in the common law. William A. Dreier et al., New Jersey Products Liability & Toxic Tort Law, § 14:3-1b (2007). N.J.S.A. 2A:58C-3 provides:
a. In any product liability action against a manufacturer or seller for harm allegedly caused by a product that was designed in a defective manner, the manufacturer or seller shall not be liable if:
. . . .
(2) The characteristics of the product are known to the ordinary consumer or user, and the harm was caused by an unsafe aspect of the product that is an inherent characteristic of the product and that would be recognized by the ordinary person who uses or consumes the product with the ordinary knowledge common to the class of persons for whom the product is intended, except that this paragraph shall not apply to industrial machinery or other equipment used in the workplace and it is not intended to apply to dangers posed by products such as machinery or equipment that can feasibly be eliminated without impairing the usefulness of the product. . . .
Thus, under the PLA, "[i]f the harm caused by a product `would be recognized by the ordinary person who uses or consumes the product' and if the harm stems from an `inherent characteristic of the product,' then the harm is not actionable." Roberts, supra, 139 N.J. at 378, 654 A.2d 1365 (internal citation omitted). A product that satisfies this definition "is, by statutory definition, not defectively designed." Ibid. The two expressed circumstances under which the Section 3a(2) defense is not available are whether (1) the product is workplace equipment or (2) the "danger[] posed by [the] product[] . . . can feasibly be eliminated without impairing the usefulness of the product." N.J.S.A. 2A:58C-3a(2). We are concerned here with the second exception.
Generally, where a defendant raises the absolute defense, thus establishing the lack of a defect, the plaintiff has the burden to establish "by a preponderance of the evidence that the defendant could have eliminated the danger without impairing the usefulness of the product." Roberts, supra, 139 N.J. at 379, 654 A.2d 1365. *970 When a plaintiff meets that burden, a jury question is presented whether the product is defectively designed even though the defendant has established the Section 3a(2) defense. Id. at 382, 654 A.2d 1365.
On appeal, plaintiffs assert that defendant cannot gain the benefit of the defense accorded by Section 3a(2) because the inherent characteristic of the product is its non-self-extinguishing nature. Thus posited, plaintiff argues that because "self-extinguishing" cigarettes exist, defendant is unable to show that a non-self-extinguishing characteristic cannot be eliminated. Plaintiffs' argument is circuitous. It is the unsafe aspect of the product that qualifies as the inherent characteristic, recognized by the ordinary consumer, that triggers the defense, not the particular design of the product. N.J.S.A. 2A:58C-3a(2). Here, the danger is that a burning cigarette creates a fire hazard, which could result in property damage or injury. To qualify under Section 3a(2), the dangerous characteristic must be inherent. An inherent characteristic is one that cannot be eliminated without impairing the usefulness of the product. Roberts, supra, 139 N.J. at 380, 654 A.2d 1365.
The burden placed on the plaintiff under Section 3a(2) is to "prove that the defendant could have eliminated the danger without eliminating an inherent characteristic of the product, and thereby significantly diminishing the product's intended use." Id. at 382, 654 A.2d 1365. At oral argument on appeal, plaintiffs conceded that the self-extinguishing cigarette contemplated in the complaint only reduces the fire danger, it does not eliminate it. Indeed, as previously noted, the Reduced Cigarette Ignition Act does not call for the elimination of the fire danger, only its reduction. More importantly, burning is the essential characteristic of a cigarette, without which it would be rendered useless.
Because plaintiffs admittedly do not allege that self-extinguishing cigarettes can eliminate the danger, they fail to state a claim upon which relief can be granted. Applied to facts here, plaintiffs do not allege that a self-extinguishing cigarette eliminates a cigarette's fire danger without eliminating its burning characteristic, thus significantly diminishing the user's ability to smoke it. Stated another way, although the existence of a self-extinguishing cigarette may reduce the danger, i.e., burning time, a complete elimination of the fire hazard would obviate all burning, which would destroy the product's intended use-to be smoked. See Roberts, supra, 139 N.J. at 381-82, 654 A.2d 1365.[2]
Plaintiffs also contend, as they did in the Law Division, that the second exception in Section 3a(2) does not apply to cigarettes because cigarettes are not "machinery or equipment." Again, we disagree. The basic principles of statutory construction are well settled. When dealing with questions of statutory construction, the Court first considers the plain meaning of the provision at issue. State v. Hoffman, 149 N.J. 564, 578, 695 A.2d 236 (1997); State v. Szemple, 135 N.J. 406, 421, 640 A.2d 817 *971 (1994); Merin v. Maglaki, 126 N.J. 430, 434, 599 A.2d 1256 (1992). "Such language should be given its ordinary meaning, absent a legislative intent to the contrary." Merin, supra, 126 N.J. at 434-35, 599 A.2d 1256. Where statutory provisions are "silent or ambiguous," we must interpret the provision in light of the Legislature's intent. Accountemps v. Birch Tree Group, 115 N.J. 614, 622, 560 A.2d 663 (1989); Union County Bd. of Chosen Freeholders v. Union County Park Comm'n, 41 N.J. 333, 337, 196 A.2d 781 (1964). When determining legislative intent, we may consider legislative history, committee reports, and contemporaneous construction. Hoffman, supra, 149 N.J. at 578, 695 A.2d 236. "`The primary task for the [c]ourt is to "effectuate the legislative intent in light of the language used and the objects sought to be achieved."'" Ibid. (quoting Merin, supra, 126 N.J. at 435, 599 A.2d 1256).
The plain import of the wording of the second exception of Section 3a(2), specifically, that "it is not intended to apply to dangers posed by products such as machinery or equipment" is one of inclusion, rather than limitation. (Emphasis added). The Senate Judiciary Committee Statement To Senate Committee Substitute for Senate No. 2805, March 23, 1987, states that Section 3a(2) defenses are intended to apply to "products whose characteristics are known to the ordinary consumer." It would be illogical to conclude that the exception to the Section 3a(2) defenses in cases where a product's dangers can be feasibly eliminated without impairing usefulness would not pertain to the same types of products for which the defenses are applicable.
Affirmed.
NOTES
[1] Because the third-party complaint is the only action remaining after the settlement, we refer to Albert and Dolores Graziano as "plaintiffs" and R.J. Reynolds as "defendant."
[2] We note that our disposition is limited to the specific manner in which the products liability claims were advanced in this particular case, as they were pleaded in the third-party complaint, and as further clarified by counsel at oral argument before us. In particular, we rely on counsel's concession that his clients are asserting that an alternative design would reduce, but not eliminate, the dangers of the prolonged burning of an unattended cigarette. In light of that concession, we need not address the viability of a products liability complaint, founded upon competent expert support, alleging that the risks of an unattended cigarette's prolonged burning could be totally eliminated by a self-extinguishing cigarette, or by some other feasible alternative cigarette design, without impairing the cigarette's utility to the smoker.